UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIANO GALLARDO FLORES, A# 201-066-803,

Petitioner,

v.

WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY,

Respondent.

No. 1:26-cv-2789 DC AC

FINDINGS AND RECOMMENDATIONS

Petitioner, an immigration detainee proceeding without counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Currently before the court is petitioner's petition for writ of habeas corpus (ECF No. 1), which respondents oppose (ECF No. 6), and petitioner's emergency motion for immediate ruling and immediate medical relief (ECF No. 11).

For the reasons discussed below, the undersigned recommends that the petition for writ of habeas corpus be granted on petitioner's substantive due process claim and that petitioner be released on conditions of supervision. Alternatively, the undersigned recommends the petition be granted on petitioner's procedural due process claim and petitioner be provided with a bond hearing before an immigration judge/neutral adjudicator within seven days, at which the Department of Homeland Security (DHS) must bear the burden of proof by clear and convincing evidence. Lastly, the undersigned recommends petitioner's request for appointment of counsel,

imbedded within the petition, and motion for immediate ruling and medical relief be denied as moot, and respondent's request to hold this matter in abeyance pending Rodriguez v. Bostock, 779 F. Supp. 3d 1239 (W.D. Wash. 2025), appeal No. 25-6842 (9th Cir.), be denied.

I. Factual Background

Petitioner, a citizen and national of Guatemala, applied for entry into the United States via a CBP One appointment on or about November 14, 2024. ECF No. 1 at 2, 6, 9, 11; ECF No. 6 at 1, 8, 12, 13, 16.[1] At the time of entry, petitioner did not have valid documents to enter, pass through, or remain in the United States. ECF No. 6 at 8. A records check revealed petitioner was granted voluntary departure in 2002, convicted of property theft in violation of Texas Penal Code § 31.03(e)(4)(A) in 2011,[2] and deported from the United States in 2011. Id. at 13, 23; ECF No. 9 at 1. Because petitioner expressed a fear of return to Guatemala, petitioner was taken into custody for a credible fear interview. ECF No. 6 at 13.

On December 2, 2024, petitioner participated in a credible fear interview, which resulted in a positive credible fear finding by an asylum officer. Id. at 16-20. On December 8, 2024, petitioner was issued a Notice to Appear (NTA). Id. at 8-9.

Petitioner remained in custody pending removal proceedings. ECF No. 1 at 6, 9. During this time, he requested and was denied a bond hearing, being deemed statutorily ineligible. ECF No. 1 at 2, 9.

Petitioner filed an application for asylum, withholding of removal and relief under the Convention Against Torture (CAT). See id. at 9; ECF No. 6 at 2. The court, on its own motion, rescheduled petitioner's individual merits hearing from July 5, 2025, to October 2025, to

---

[1] Respondent's request that the court take judicial notice of Exhibits 1-6, which were submitted with respondent's answer and are documents from petitioner's immigration record, ECF No. 6 at 1 n.1., is granted. See Dent v. Holder, 627 F.3d 365, 371 (9th Cir. 2010) (taking judicial notice of "official agency records" from a noncitizen's A-file).

[2] Petitioner's briefing indicates he has no criminal history. ECF Nos. 1 at 6 & 11. However, he does not claim that the Federal Bureau of Investigation (FBI) record is incorrect, and the record shows he testified in immigration court to having been convicted "of being in possession of a truck stolen by another person and he received a one-year sentence." ECF No. 6 at 13, 23, 38. Accordingly, based on the record before the court, the undersigned accepts respondent's version of events.

February 3, 2026. ECF No. 1 at 10.

On February 3, 2026, an immigration judge granted the Department of Homeland Security's (DHS's) motion to pretermit petitioner's claims under the safe third country agreement and ordered petitioner removed to Honduras. ECF No. 6 at 2, 22-25. Petitioner filed a timely appeal with the Board of Immigration Appeals (BIA). Id. at 25, 27.

Petitioner is currently detained at California City Immigration Processing Center.[3]

II. Procedural History

On April 13, 2026, petitioner filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Respondent filed a return, and petitioner filed a reply. ECF Nos. 6, 9. Briefing is now complete.

On July 8, 2026, the court received petitioner's emergency motion for immediate ruling and medical relief. ECF No. 11.

III. Legal Standard

A writ of habeas corpus may be granted to anyone who is held in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citations omitted)). In federal habeas proceedings, the petitioner is required to prove their case by a preponderance of the evidence. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

"District courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order[.]" Lopez-Marroquin v. Barr, 955 F.3d 759 (9th Cir. 2020) (citation omitted); see also Zadvydas v.

[3] The court takes judicial notice of the information provided on the Immigration and Customs Enforcement ("ICE") Online Inmate Locator website, operated by the Department of Homeland Security, available at https://locator.ice.gov/odls/#/search (last visited July 13, 2026), which provides petitioner's current detention facility. Fed. R. Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned); cf. City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.").

Davis, 533 U.S.678, 688 ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

IV. Discussion

A. Overview

Liberally construed, the petition alleges that petitioner's seventeen-month detention without a bond hearing, which is expected to continue pending his appeal, violates his statutory rights as well as his substantive and procedural due process rights. See ECF No. 1. By way of relief, petitioner seeks release on parole or bond, and an attorney to assist with his habeas petition. Id. at 7. The court construes the latter as a motion for appointment of counsel.

In response to petitioner's statutory claim, respondent argues that the petition should be denied because petitioner is an "applicant for admission" with a credible fear of persecution, is subject to mandatory detention under either 8 U.S.C. § 1225(b)(1)(B)(ii) or 8 U.S.C. § 1225(b)(2)(A) and is ineligible for a bond hearing. ECF No. 6 at 4-5. Respondent asks that further briefing in this case be held in abeyance until the resolution of the appeal in Rodriguez v. Bostock, and that if the court grants an injunction, the court include language stating the injunction does not enjoin or restrain respondent from detaining petitioner to execute a *final* order of removal. Id. at 6. Respondent does not address any aspect of petitioner's constitutional claims.

Petitioner filed a late reply arguing that he is not subject to a final order of removal, his detention has become unreasonably prolonged under the Due Process Clause, "[t]he Due Process Clause prohibits excessive detention without adequate procedural protections," and his "[c]ontinued detention serves no legitimate purpose and imposes a severe deprivation of liberty" because petitioner does not present a danger or flight risk and his deteriorating health and inadequate medical care in detention supports his immediate release. ECF No. 9.

B. Statutory Claim

The court agrees with respondent that to the extent petitioner argues he has a statutory right to a bond hearing or parole based on his prolonged, indefinite detention, he is mistaken.

////

i. Relevant Statutory Framework

Title 8 U.S.C. § 1225 governs the procedures by which the government may mandatorily detain an "applicant for admission." Section 1225(a)(1) defines an "applicant for admission" as a noncitizen "[1] present in the United States who has not been admitted or [2] who arrives in the United States (whether or not at a designated port of arrival and including [a noncitizen] who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1). An "applicant for admission" is a "term of art denoting a particular legal status." Torres v. Barr, 976 F.3d 918, 927 (9th Cir. 2020); see also 8 U.S.C. § 1158 (referring to"[a]ny alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), as "alien's status").

"[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings v. Rodriguez, 583 U.S. 281, 287 (2018). Both categories are subject to mandatory detention until a certain point or until certain proceedings have concluded. Id.

"Section 1225(b)(1) applies to [noncitizens] initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" as well as "certain other aliens designated by the Attorney General in his discretion." Id. (citing 8 U.S.C. § 1225(b)(1)(A)(i), (iii)). If a noncitizen subject to § 1225(b)(1) "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the [noncitizen] for an interview by an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(i)-(ii). If, after conducting a credible fear interview, the asylum officer determines that the noncitizen has a credible fear of persecution, the noncitizen "shall be detained for *further consideration* of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii).

Where there is a positive credible fear determination, the United States Citizenship and Immigration Services (USCIS)

////

> has complete discretion to *either* [1] issue a Form I-862, Notice to Appear, for full consideration of the asylum and withholding of removal claim in proceedings under section 240 of the Act, or [2] retain jurisdiction over the application for asylum pursuant to § 208.2(a)(1)(ii) for *further consideration* in a hearing pursuant to § 208.9.

8 C.F.R. § 208.30(f). The filing of an NTA commences *regular* removal proceedings before an immigration judge[4] under INA § 240 (8 U.S.C. § 1229a) and terminates *expedited* removal proceedings under INA § 235(b)(1) (8 U.S.C. § 1225(b)(1)). See id.; 8 C.F.R. § 208.2(b) ("Immigration judges shall have exclusive jurisdiction over asylum applications filed by [a noncitizen] who has been served a . . . Form I-862, Notice to Appear, after the charging document has been filed with the Immigration Court."); Kumar v. Dep't of Homeland Sec., No. 5:26-cv-0559 CV (ASx), 2026 WL 713078, at *1, 2026 U.S. Dist. LEXIS 53668, at *4 (C.D. Cal. Mar. 2, 2026) (expedited removal proceedings terminated upon the issuance of an NTA, "placing Petitioner in full removal proceedings under INA § 240"); Guatam v. Corr. Corp. of Am., No. 3:25-cv-3600 JES DEB, 2026 WL 25846, at *1, 2026 U.S. Dist. LEXIS 994, at *2 (S.D. Cal. Jan. 5, 2026) (after a positive credible fear determination, "Petitioner received a[n] [NTA], taking him out of expedited removal and placing him into section 240 removal proceedings"). In contrast, when USCIS retains jurisdiction, expedited removal proceedings terminate to allow an asylum

---

[4] An "immigration judge" is "an attorney whom the Attorney General appoints as an administrative judge within the Executive Office for Immigration Review [(EOIR)], qualified to conduct specified classes of proceedings, including a hearing under section 1229a of [the INA]." 8 U.S.C. § 1101(b)(4). "The EOIR remains an agency of the Department of Justice [and] continues to administer asylum applications, through immigration judges." Nijjar v. Holder, 689 F.3d 1077, 1079 (9th Cir. 2012). An "immigration judge" is not employed by DHS, formerly the Immigration and Naturalization Service (INS) or "the Service," or its subdivisions, such as USCIS. See 8 U.S.C. § 1101(b)(4); Brazil Quality Stones, Inc. v. Chertoff, 531 F.3d. 1063, 1066 n.2 (9th Cir. 2008) (in 2003, INS functions were transferred to the newly-created DHS); see also Hajro v. United States Citizenship & Immigr. Servs., 811 F.3d 1086, 1092 (9th Cir. 2016) (recognizing INS as USCIS's predecessor agency); Ghafoori v. Napolitano, 713 F. Supp. 2d 871, 873 n.1 (N.D. Cal. 2010) (referring to both INS and USCIS as "the Service" because "the functions of the INS were subsumed by [DHS], and USCIS, "the division of DHS that oversees asylum claims and other lawful immigration, became responsible for Plaintiff's case following the agency restructuring").

officer[5] to "further consider an application for asylum" by following the procedures for an interview before a USCIS. 8 C.F.R. § 208.2(a)(1)(ii); 8 C.F.R. § 208.9.

Mandatory detention under § 1225(b)(2)(A) applies to a noncitizen who is an "applicant for admission" who is "seeking admission," who does not fall under § 1225(b)(2)(B) exceptions or is subject to subparagraph (C), and is undergoing proceedings under § 1229a before an immigration judge. See 8 U.S.C. §§ 1225(b)(2)(A), 1229a. Exceptions to the applicability of 8 U.S.C. § 1225(b)(2)(A) include noncitizen's "to whom [§ 1225(b)(1)] applies." 8 U.S.C. § 1225(b)(2)(B)(ii).

Despite the statute's mandatory detention provisions, the Secretary of DHS may, in his discretion, with some exceptions, temporarily release a noncitizen on parole "for urgent humanitarian reasons or significant public benefit." Jennings, 583 U.S. at 288 (citing 8 U.S.C. § 1182(d)(5), 8 C.F.R. §§ 212.5(b), 235.3 (2017)). The "express exception to detention" under 8 U.S.C. § 1182(d)(5) "implies that there are no other circumstances under which [noncitizens] detained under § 1225(b) may be released." Id. at 300. Accordingly, there is no statutory right to a bond hearing for noncitizens detained under § 1225(b). Id. at 296-97.

ii. Analysis

As noted above, respondent argues that the positive credible fear determination means petitioner is mandatorily detained under § 1225(b)(1)(B)(ii). Alternatively, citing Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026) and Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026), respondent argues that petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Petitioner did not respond to either argument.

To the extent petitioner contends that he has a statutory right to a bond hearing, he is mistaken. Petitioner was detained upon entry into the United States and never released. He is

---

[5] An "asylum officer" who conducts the credible fear interview is defined as "an immigration officer." 8 U.S.C. § 1225(b)(1)(E). An "immigration officer" is "an employee or class of employees of [USCIS] or of the United States designated by the Attorney General." 8 U.S.C. § 1101(a)(18); see Nijjar, 689 F.3d at 1079 (when INS ceased to exist, USCIS, a new department of DHS, became responsible for administering "asylum applications through its asylum officers.").

therefore subject to mandatory detention under 8 U.S.C. § 1225(b) and not entitled to a bond hearing. The subdivision which applies—(b)(1) or (b)(2)—is irrelevant because neither provides a right to a bond hearing.[6]

To the extent petitioner argues he has a statutory right to parole, he is also mistaken. As discussed above, parole under 8 U.S.C. § 1182(d)(5) is discretionary. 8 U.S.C. § 1182(d)(5). To challenge a discretionary parole decision, petitioner must allege and demonstrate that the exercise of discretion somehow violates his constitutional rights. See Nguyen v. Kissinger, 528 F.2d 1194, 1199 (9th Cir. 1975) (discretion to grant parole "does not extend to the violation of constitutional rights, nor can it—the sovereignty they exercise, whether delegated by Congress to be exercised within strict limitations or in a broadly discretionary manner, is always and necessarily bounded by the limitations placed on that power in the Constitution").

iii. Conclusion

For the foregoing reasons, petitioner's statutory claim fails.

C. Constitutional Claims

i. Relevant Legal Framework

The Due Process Clause protects persons in the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

"[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693 (2001) (citations omitted); Wong Wing v. United States, 163 U.S. 228, 238 (1896) ("[I]t must be concluded that all persons within the territory of the United States are entitled to the protection

[6] Nonetheless, the undersign notes that 8 U.S.C. § 1225(b)(2)(B)(ii) excludes the application of § 1225(b)(2)(A) to individuals whom § 1225(b)(1) applies. Here, petitioner was clearly detained under § 1225(b)(1) and placed into expedited removal proceedings. Although expedited removal proceedings terminated upon the filing of petitioner's NTA, it appears petitioner's detention authority would continue under § 1225(b)(1)(B)(ii) not § 1225(b)(2)(A).

guarantied [sic] by [the Fifth and Sixth] amendments, and that even [noncitizens] shall not . . . be deprived of life, liberty, or property without due process of law."). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017). Those protections apply regardless of whether the noncitizen is "seeking admission" or is "admitted." Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537, 549 n.4 (2007).

"The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (citation omitted). The substantive component of the Due Process Clause "forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided, *unless* the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993) (citations omitted) (emphasis added); see also Regino v. Staley, 133 F.4th 951, 960 (9th Cir. 2025). Substantive due process protects noncitizens from confinement except in "special and narrow nonpunitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690 (internal quotations omitted) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992) and Kansas v. Hendricks, 521 U.S. 346, 356 (1997)); Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) (citing United States v. Salerno, 481 US. 739, 750-51 (1987), Foucha, 504 U.S. at 79, and Kansas, 521 U.S. at 360, 364) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment served the government's legitimate goals."); cf. United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing Salerno, 481 U.S. at 747) (holding that a "[substantive] due process violation occurs when [pretrial] detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose."). "At the least, [substantive]

due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972). In the immigration context, "[substantive] [d]ue process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." Padilla, 704 F. Supp. 3d at 1172 (citing Zadvydas, 533 U.S. at 690-91).

By comparison, "'[p]rocedural due process rules are meant to protect' against 'the mistaken or unjustified deprivation of life, liberty, or property.'" Escobar Salgado v. Mattos, 809 F. Supp. 3d 1123, 1158 (D. Nev. 2025) (quoting Trump v. J.G.G., 604 U.S. 670 (2025) (per curiam) (quoting Carey v. Piphus, 435 U.S. 247, 259 (1978))).

In 2003, the Supreme Court upheld another mandatory detention provision—8 U.S.C. § 1226(c)—as constitutionally valid on its face. Demore v. Kim, 538 U.S. 510, 531 (2003). However, the Supreme Court did so with the understanding that mandatory detention under § 1226(c) constitutes a "very limited time" that "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the [noncitizen] chooses to appeal." Demore, 538 U.S. at 513, 529-30 & n.12.

Several years later in Jennings, the Supreme Court held that § 1225(b) and § 1226(c) did not require periodic bond hearings and remanded the case before it without addressing the due process claims.[7] Jennings, 583 U.S. at 312. Neither Demore nor Jennings forecloses an as-applied challenge to mandatory detention under § 1225(b). See Jennings, 583 U.S. at 312 (court did not address constitutional arguments because they were not considered below); Nielsen v. Preap, 586 U.S. 392, 420 (2019) (as-applied challenge to § 1226(c) not foreclosed).

"An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted), as

[7] The respondents in Jennings had argued that 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) "do not authorize 'prolonged' detention in the absence of an individualized bond hearing" and that absent a bond-hearing requirement, the statutes violated due process. Jennings, 583 U.S. at 291.

amended on denial of reh'g (July 29, 1998).

ii. Analysis – Substantive Due Process Claim

Neither party identifies a framework for evaluating whether petitioner's mandatory detention violates substantive due process. However, several judges, including judges from this court, have adopted and applied the five-factor balancing test developed in Doe v. Becerra, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024) to do so. See Doe v. Chestnut, 810 F. Supp. 3d 1169 (E.D. Cal. 2025); Rivas Campos v. Chestnut, 1:26-cv-DJC SCR, 2026 WL 1816190, at *8 (E.D. Cal. June 24, 2026). The five factors are:

> (1) the length of detention and whether it is excessive in relation to its regulatory purpose;
> (2) the government's contribution to any delay;
> (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger;
> (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and
> (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held.

Becerra, 732 F. Supp. 3d at 1080 (quoting Doe v. Becerra, 723 F. Supp. 3d 688 (N.D. Cal. 2024) (internal citations omitted)). Applying these factors, the undersigned concludes petitioner's current detention violates substantive due process.

1. Length of Detention

While there is no clearly delineated threshold for when detention becomes prolonged in the pre-final order of removal context, Demore is instructive. As noted above, in Demore, the Supreme Court upheld § 1226(a)—another pre-final order of removal mandatory detention statute—on a facial challenge where confinement generally "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the [noncitizen] chooses to appeal." Demore, 538 U.S. at 513, 529-30 & n.12. Here, petitioner's detention has reached twenty (20) months, which is four times as long as the minority cases discussed in Demore and is undeniably prolonged. See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and

"neither release nor removal are imminent.").

In the criminal pretrial context, the Ninth Circuit cautioned that twenty-one months was "approaching the limits of what due process can tolerate," "significant under any metric," and "deeply troubling." Torres, 995 F.3d at 709. The Ninth Circuit explained that the fact that detention had lasted so long "weigh[ed] in favor of recognizing a due process violation." Id. at 708. The court then proceeded to balance all the relevant factors against the length of duration to determine whether the twenty-one-month detention was constitutionally permissible in the pre-trial detainee's particular case. Id. at 709.

The undersigned finds the pretrial detainee context sufficiently analogous and similarly finds that petitioner's twenty-month immigration detention weighs in favor of finding a substantive due process violation.

2. Government Contribution to Delay

"The second factor is closely related to the first and addresses the reasons for any delays that have contributed to the duration of detention." Becerra, 732 F. Supp. 3d at 1083. On the record before the court, it does not appear that petitioner contributed to the delay in his removal proceedings. Petitioner expressed a fear of return to Guatemala within three days from his arrival. He received a credible fear hearing within a month and was issued an NTA within that same timeframe. Petitioner timely filed an asylum application and was ready to proceed on the merits of his application. However, it appears that the immigration court, on its own, extended the merits hearing by eight months. After the immigration judge issued a ruling, petitioner filed a timely appeal to the BIA. That appeal has been pending for four months. The delays described are not attributable to either party and "appear to be the result of the fact that the immigration system is overextended and that decisions from an immigration judge or the BIA take time." Becerra, 732 F. Supp. 3d at 1083. Accordingly, this factor is neutral.

3. Evidence of Flight and Danger Risk

> Determining whether Petitioner's prolonged detention has become punitive requires consideration of the extent to which it serves its regulatory purposes of preventing flight and danger to the community. "This inquiry requires evaluating the degree to which [Petitioner] poses a flight risk or danger, which in turn requires the

> Court to consider the evidence related to those risks."

Rivas Campos, 2026 WL 1816190, at *9 (quoting Becerra, 732 F. Supp. 3d at 1086).

On the record before the court, the undersigned finds that petitioner presents a low-to-medium flight risk. As petitioner notes, on or about November 14, 2024, petitioner entered the United States seeking asylum through a CBP One appointment. ECF No. 1 at 2, 6, 9. Although this weighs in his favor, see Rivas Campos, 2026 WL 1816190, at *10, his prior immigration violations, resulting in voluntary departure in 2002 and a deportation in 2011, weigh against him.

His family ties in the United States also do not weigh in his favor. Petitioner indicates he seeks parole or bond so that he can fight his case from out-of-custody and reunite with his family. See id. at 7, 10. However, he does not identify which family members reside in the United States and indicates his four children reside in Guatemala. See id. at 6, 11. Consequently, the extent of petitioner's familial ties in the United States is unknown.

With respect to dangerousness, the only evidence provided is petitioner's FBI record indicating he was convicted of property theft fifteen years ago. Id. at 38. As a judge in the Northern District of California explained, "decades-old criminal conduct is relevant but not dispositive in evaluating present danger" and "there are serious due process concerns with simply presuming someone remains dangerous based on past conduct without individualized consideration and any recent evidence." Becerra, 732 F. Supp. 3d at 1087. Because the government has not provided evidence beyond petitioner's fifteen-year-old conviction for a non-violent property offense, the undersigned finds petitioner presents a low risk of dangerousness.

Next, flight risk and dangerousness "must . . . be considered in conjunction with the next related factor—whether any risks can be mitigated through alternatives to detention." Becerra, 732 F. Supp. 3d at 1087.

4. Alternatives to Detention

> The next question is whether the government's interests in limiting the risks of flight and community danger can be adequately protected through alternatives to detention that are less harsh. If alternatives can mitigate risks and protect the government's interests, then detention (instead of one of these alternatives) is excessive in relation to those interests and unconstitutionally punitive.

Id. at 1088.

With respect to flight risk, ICE's Alternatives to Detention (ATD) program, which includes GPS tracking via an ankle monitor and/or check ins via a smartphone application, telephone, or in-person appointments, can successfully mitigate the risk of flight. See id.; Rivas Campos, 2026 WL 1816190, at *11 n.11 (noting that with respect to the fourth factor, "there are routine and obvious conditions that ICE can impose, including check-in with ICE officials and electronic monitoring"). Current fiscal year 2026 data, through Mach 2026, shows ATD programs are largely successful in minimizing flight risk. During this reporting period, participants in these programs appeared at 97.7% of hearings, including 89.3% of final hearings. See ICE, Detention Management, Detention FY 2026 YTD, Alternatives to Detention FY 2026 YTD and Facilities FY 2026 YTD, Footnotes, available at https://www.ice.gov/detain/detention-management#stats (last visited July 13, 2026). Fiscal year 2025 data shows similar results with participants in these programs attending 98.2% of hearings, including 86.4% of final hearings. Id., Detention FY 2025 YTD, Alternatives to Detention FY 2025 YTD and Facilities FY 2025 YTD, Footnotes, available at available at https://www.ice.gov/detain/detention-management#stats (last visited July 13, 2026).

With respect to dangerousness, "in the abstract, . . . someone who knows their location is being monitored will face at least some additional incentive not to engage in criminal conduct." Becerra, 732 F. 3d at 1088.

Because ICE's ATD programs "can significantly mitigate the flight risk and potentially mitigate any danger to the community," this factor weighs in favor of finding that petitioner's continued, prolonged, indefinite detention, where he presents a low-to-medium flight risk and low risk of danger, is excessive in relation to protect the government's interest in limiting risk of flight and danger to the community. See id.

5. Conditions of Confinement

"[W]hen a [civil] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'" Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004).

Petitioner complains that the food is "very bad," that he "can't sleep at night," that he is "depressed," "stressed," "anxious," and feels like he is "going crazy" because he was separated from his family. Id. at 6, 11. Petitioner also complains he requires surgery for "stone problems" and that the medication he receives for his stomach problems is not good. Id. at 7, 10.[8] Other courts have noted poor conditions at California City Detention Facility, where petitioner is current detained. Rivas Campos, 2026 WL 1816190, at *12 (collecting cases). Respondent does not respond to these complaints.

Without more information, the undersigned is unable to conclude that these conditions are similar or more restrictive than those in which petitioner's criminal counterparts are held. Nonetheless, "the Court must weigh these conditions appropriately in considering the burden imposed by the duration of [petitioner's] detention." Becerra, 732 F. Supp. 3d at 1089.

6. Balancing of Factors

On balance, the record shows petitioner's detention is excessive in relation to his low-to-medium flight risk, which can be mitigated through very effective ATD programs; his low danger risk, which is based solely on a fifteen-year-old property theft conviction; his twenty month detention, considering no attributable delay by petitioner, no strong evidence justifying continued detention, and available, successful alternatives to detention. Accordingly, the undersigned finds that petitioner's detention has become punitive, violates substantive due process, and recommends that the petition be granted on this claim.

iii. Analysis – Procedural Due Process Claim

The undersigned now turns to petitioner's procedural due process claim. Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted); Morrissey v. Brewer, 408

[8] Petitioner's emergency motion for immediate release and medical relief states he has sought medical attention for his painful hemorrhoids, rectal bleeding, chronic constipation, and weight loss and has not received adequate evaluation or effective treatment. ECF No. 11 at 1-2.

U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

1. Protected Liberty Interest

As previously stated, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." See Zadvydas, 533 U.S. at 690. In the pre-final order removal context, a noncitizen has a liberty interest in his freedom from civil detention that is protracted and has no clear end in sight. Mohammed v. Warden of Cal. City Det. Ctr., No. 1:26-cv-0118 DJC CSK, 2026 WL 192368, at *3, 2026 U.S. Dist. LEXIS 13886, at *6 (E.D. Cal. Jan. 26, 2026) (finding petitioner established a liberty interest protected by the Due Process Clause where petitioner's detention "will continue for a protracted and indefinite period," while the case proceeds before the immigration court, the BIA, and then Ninth Circuit, if either party seeks further review); see also Tigranyan v. Warden of California City Det., No. 1:25-cv-1554 DJC SCR, 2026 WL 91765, at *4, 2026 U.S. Dist. LEXIS, at *10-13 (E.D. Cal. Jan. 13, 2026) (concluding that a petitioner with a credible fear finding has established a protected liberty interest where his detention has lasted fifteen (15) months and he faces a protracted review of the merits of his asylum claim, which includes two potential appeals); Khaco v. Warden, No. 1:25-cv-1659 CSK, 2026 WL 295551, at *4, 2026 U.S. Dist. LEXIS, at *10-11 (E.D. Cal. Feb. 4, 2026) (same).

Here, petitioner has been continuously detained since his arrival on November 14, 2024. During the past twenty months, he established a credible fear of return to Guatemala, timely filed an asylum application and evidence, and timely appealed the immigration judge's removal order to the BIA. His appeal has been pending before the BIA for five months, and no end to the appeals process appears to be in sight. Accordingly, the undersigned finds that petitioner has a protected liberty interest.

2. Process Due

a. Applicable Test

Having determined that a liberty interest exists, the court must now examine what process

is due. See Thompson, 490 U.S. at 460 (the court "first asks whether there exists a liberty or property interest which has been interfered with" and then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient"). Courts in the Ninth Circuit have applied different tests to determine what process is due when detention has become prolonged and indefinite. See Mohammed, 2026 WL 192368, at *3 (describing different tests used by district courts); BHIM RAJ KC. v. Chestnut, No. 1:26-cv-3159 TLN SCR, 2026 WL 1266256, 2026 U.S. Dist. LEXIS 102634 (E.D. Cal. May 8, 2026) (applying the Mathews v. Eldridge, 424 U.S. 319 (1976) test to a prolonged detention claim by an asylum applicant detained under 8 U.S.C. § 1225(b)); R.M. v. Warden of the Golden State Annex ICE Det. Facility, No. 1:25-cv-1607 TLN AC, 2026 WL 836322, 2026 U.S. Dist. LEXIS 65266 (E.D. Cal. March 26, 2026) (same); Nasar v. Warden, California City Detention Ctr., No. 2:26-cv-0433 DC AC, 2026 WL 731160, 2026 WL U.S. Dist. LEXIS 54161 (E.D. Cal. Mar. 13, 2026) (same); Jemal v. Warden, California City Det. Facility, No. 2:26-cv-1187 TLN JDP, 2026 WL 1584710, 2026 U.S. Dist. LEXIS 122835 (E.D. Cal. June 3, 2026) (applying Lopez v. Garland, 631 F. Supp. 3d 870 (E.D. Cal. 2022) test to determine whether due process requires a bond hearing for a noncitizen detained under 8 U.S.C. § 1225(b)); Choudhary v. Chestnut, No. 1:26-cv-1770 DJC CKD, 2026 WL 816711, 2026 U.S. Dist. LEXIS 62691 (E.D. Cal. Mar. 24, 2026) (applying Banda v. McAleenan, 385 F. Supp. 3d 1099 (W.D. Wash. 2019) test to determine whether petitioner should be granted a bond hearing).

The undersigned applies the framework set forth in Mathews. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming without deciding that the Mathews standard applies to a due process challenge to a non-citizen's ongoing detention); A.E. v. Andrews, No. 1:25-cv-0107 KES SKO, 2025 WL 1424382, at *4, 2025 U.S. Dist. LEXIS 94233, at *10 (E.D. Cal. May 16, 2025) (noting most district courts in the Ninth Circuit employed Mathews to evaluate entitlement to a bond hearing), adopted by 2025 WL 1808676, 2025 U.S. Dist. LEXIS 125244 (E.D. Cal. July 1, 2025). Under Mathews, the court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

> substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. Additionally, due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." Rodriguez Diaz, 53 F.4th at 1206.

b. Private Interest

With respect to the first factor, "an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'" Id. at 1207 (quoting Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011)); see also Lopez, 631 F. Supp. 3d at 880 ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.") (internal citation omitted). As addressed above, petitioner has been detained twenty (20) months without a bond hearing and with no end currently in sight. Petitioner therefore has a substantial private interest in his freedom from prolonged civil detention.

In evaluating the first Mathews factor, the court also considers whether petitioner contributed to the prolonged length of his detention. Rodriguez Diaz, 53 F.4th 1207-08; Arshakyam v. Warden of California City Det., No. 1:25-cv-1780 DAD AC, 2026 WL 143143, at *4 (E.D. Cal. Jan. 20, 2026). Here, petitioner expressed a fear of return to Guatemala within three days from his arrival. He received a credible fear interview within a month and was issued an NTA within that same timeframe. Petitioner filed a timely asylum application and was ready to proceed on the merits of his application, however, the court extended the merits hearing by eight months. Petitioner filed a timely appeal to the BIA, which has been pending for four months. His pursuit of this appeal does not undercut his private interest. See Lopez, 631 F.Supp.3d at 882 ("[T]he fact that Petitioner chose to pursue [an application for relief] and requested continuances to further that application does not deprive him of a constitutional right to due process.").] Moreover, respondents do not argue petitioner caused any delay in his proceedings and there is no evidence in the record to support such conclusion.

For all these reasons, the first Mathews factor weighs in petitioner's favor.

c. Risk of Erroneous Deprivation

The second factor, the risk of erroneous deprivation, also weighs in petitioner's favor. Considering that petitioner has been provided no process for twenty months, the risk of erroneous deprivation is high, particularly because respondent does not argue or present any evidence that petitioner presents a danger to the community or a flight risk. See A.E., 2025 WL 1424382, at *5, 2025 U.S. Dist. LEXIS 94233, at *12 ("The risk of an erroneous deprivation of [a petitioner's] interest is high where [h]e has not received any bond or custody redetermination hearing[.]" (alterations in original) (citation and internal quotation marks omitted)); R.D.T.M. v. Wofford, No. 1:25-cv-1141 KES SKO, 2025 WL 2617255, at *6, 2025 U.S. Dist. LEXIS 176124, at *11 (E.D. Cal. Sept. 9, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." (alteration in original) (citations omitted)).

To the extent respondent mentions petitioner's 15-year-old conviction for theft to suggest dangerousness or flight risk, ECF No. 6 at 2, the court does not agree that such an old conviction, without more, is sufficient to alleviate the high risk of erroneous deprivation. To the contrary, it highlights the need for critical procedural safeguards, such as a bond hearing before a neutral adjudicator where both parties can present evidence.

For these reasons, the undersigned finds the risk of erroneous deprivation weighs in favor of petitioner and the provision of additional safeguards. See Van Luan Vu v. Warden California Det. Facility, No. 1:26-cv-3400 DC CSK, 2026 WL 1623153, at *5 (E.D. Cal. June 5, 2026) ("Where petitioner has been detained for seventeen months, has not received a bond hearing where a neutral decisionmaker determined whether petitioner posed a danger to the community or a risk of flight to justify continued detention, his asylum hearing was not heard until April 2026, and it is not clear when detention will end given that his appeal to the BIA is pending, and he may then further appeal to the Ninth Circuit, the probable value of this additional procedural safeguard is high.").

d. Government Interest

Finally, while the government has a strong interest in enforcing its immigration laws, its

"interest in detaining petitioner without a hearing is 'low'" and custody hearings in immigration court "are routine and impose a 'minimal' cost." R.T.D.M., 2025 WL 2617255, at *6, 2025 U.S. Dist. LEXIS 176124, at *11 (citing Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). "Providing a bond hearing would not undercut the government's asserted interest in effecting removal. After all, the purpose of a bond hearing is to inquire whether the [non-citizen] represents a flight risk or danger to the community." Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (citing In re Guerra, 24 I. & N. Dec. 37 (BIA 2006)); see also Velasco Lopez v. Decker, 978 F.3d 842, 854 (2d Cir. 2020). Moreover, "[r]espondents offer no 'justifiabl[e] concern[]' that Congress might have sought to address by providing for [petitioner's] unbailable detention." Rincon v. Hyde, 810 F. Supp. 3d 101, 114 (D. Mass. 2025) (first two alterations in original) (discussing petitioner's detention under § 1225(b)(1)).

e. *Mathews* Balancing

For these reasons, the court finds that the government's interest in detaining petitioner without a hearing is low and does not outweigh petitioner's substantial liberty interest or the high risk of erroneous deprivation of liberty. The petition should therefore be granted on petitioner's procedural due process claim.

D. Remedy

The undersigned next turns to the appropriate remedy.

> Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 [ ] (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319 [ ] (1995). "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 [ ] (1973) (footnote omitted).

Doe v. Chestnut, 810 F. Supp. 3d at 1202.

The undersigned finds that the appropriate remedy for the substantive due process violation discussed above is release with standard conditions of supervision. See id. (ordering

release with "appropriate conditions so that the government's significant interests in ensuring Petitioner's appearance at future proceedings, protecting the community, and that, if ordered removed, Petitioner will be successfully removed, are protected."); Zadvydas, 533 U.S. at 700 ("[T]he [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

The undersigned finds that the appropriate remedy for the procedural due process violation discussed above is a bond hearing before an immigration judge within seven days, at which the immigration judge must order petitioner released unless the immigration judge finds that petitioner is a risk of flight or danger to the community by clear and convincing evidence. See Van Luan Vu, 2026 WL 1623153, at *6; Maksim v. Annex, No. 1:25-cv-0955 SKO, 2025 WL 2879328, at *6, 2025 U.S. Dist. LEXIS 200588, at *17 (E.D. Cal. Oct. 9, 2025) (adopting clear and convincing evidence burden in similar circumstance); Ohanyan v. Warden of Cal. City Det., No. 1:25-cv-1661 TLN SCR, 2026 WL 183743, at *7, 2026 U.S. Dist. LEXIS 12932, at *22 (E.D. Cal. Jan. 23, 2026) (recommending a bond hearing to an asylum seeker detained for over 14 months), adopted by 2026 WL 295550, 2026 U.S. Dist. LEXIS 23431 (E.D. Cal. Feb. 4, 2026).

Because the court has discretion in granting relief, and because release is the appropriate remedy for the substantive due process violation, the undersigned recommends that petitioner be granted immediate release on conditions of supervision.[9]

E. Respondent's Request for Abeyance

In the return to the petition, respondent requests that the petition be denied or alternatively, held in abeyance pending the resolution of several pending Ninth Circuit cases, including Rodriguez v. Bostock, 779 F. Supp. 3d 1239 (W.D. Wash. 2025), appeal No. 25-6842 (9th Cir.), and Benavides Carballo v. Andrews, No. 1:25-cv-0978 KES EPG, appeal No. 25-6533 (9th Cir.). ECF No. 6 at 5. Respondent argues that Rodriguez v. Bostock may have precedential

[9] In the alternative, should the district judge find only a procedural due process violation, the recommended remedy is a bond hearing before an immigration judge within seven days, at which the immigration judge must order petitioner released unless the immigration judge finds that petitioner is a risk of flight or danger to the community by clear and convincing evidence

effect in this case. Id. at 6. Respondent, however, does not explain how Rodriguez v. Bostock—a case concerning the issue whether 8 U.S.C. § 1225(b)(2) applies to individuals who entered the country without inspection, were not apprehended at the border, and are not subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231—may have precedential effect on this case.

For several reasons—because the timeline for a decision in Rodriguez v. Bostock is uncertain, the undersigned recommends release on different grounds than those at issue in Rodriguez v. Bostock, and respondent fails to show abeyance is proper or warranted,—the court should decline to hold petitioner's case in abeyance.[10] See Am. Life Ins. Co. v. Stewart, 300 U.S. 203, 215 (1937) ("In the exercise of a sound discretion," a court may "hold one lawsuit in abeyance to abide the outcome of another, especially where the parties and the issues are the same."); Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005) (the court must weigh "'the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" (quoting CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962))); Dependable Highway Exp. v. Navigators Ins. Co., 498 F.3d 1059, 1066 (9th Cir. 2007) ("'[I]f there is even a fair possibility that the stay . . . will work damage to someone else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.'" (quoting Landis v. N. Am. Co., 299 U.S. 248, 255 (1936))).

F. Petitioner's Emergency Motion for Immediate Ruling and Medical Relief

The court recently received petitioner's emergency motion for immediate ruling and medical relief. ECF No. 11. In light of the undersigned's findings and recommendations, the

[10] It's unclear whether respondent cites to Benavides Carballo to further argue that abeyance is warranted. To the extent this is the case, the undersigned should rejected respondent's argument because respondent does not explain how Benavides Carballo—a case concerning an as-applied challenge to detention under 8 U.S.C. § 1226(c) in the context of re-detention—may be dispositive of the issues in this case. See Singh v. Bondi, No. 1:26-cv-2175 KES EPG (HC), 2026 WL 805685, *1 n.2 (E.D. Cal. Mar. 23, 2026) (declining to hold the case in abeyance pending resolution of appeals in Rodriguez v. Bostock and Benavides Carballo because the issues in those cases were different).

motion should be denied as moot.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED on his constitutional claims (substantive and procedural due process) as follows:

   a. Respondent shall IMMEDIATELY RELEASE petitioner Mariano Gallardo Flores (A# 201-066-803) from custody; RETURN all of petitioner's documents and possessions upon his release from custody; FILE a notice of compliance within three (3) days of any order adopting these findings and recommendations, confirming petitioner's release from custody and the return of his documents and possessions.

   b. Respondent may place petitioner on standard conditions of supervision upon release.

2. Petitioner's request for appointment of counsel, within his petition, be DENIED as MOOT.

3. The court DECLINE to hold petitioner's case in abeyance pending resolution of Rodriguez v. Bostock, 779 F. Supp. 3d 1239 (W.D. Wash. 2025), appeal No. 25-6842 (9th Cir.).

4. Petitioner's emergency motion for immediate ruling and medical relief (ECF No. 11) be DENIED as MOOT.

5. Any order adopting these findings and recommendations include language that it does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal and petitioner receives notice of that final order of removal.

6. The Clerk of the Court be directed to:

   a. Serve the California City Detention Center with a copy of this order; and

   b. Enter judgment in petitioner's favor on his constitutional claims and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within three days** after

being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 14, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE